# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FAMILY ADVOCACY AND SUPPORT
ASSOCIATION,
c/o/ 24 Evarts Street, N.E.
Washington, D.C. 20002,

          **Plaintiff,**

      **v.**

MARTHA B. KNISLEY, Director, Department
of Mental Health of the District of Columbia, and
the DEPARTMENT OF MENTAL HEALTH OF
THE DISTRICT OF COLUMBIA;
64 New York Avenue, N.E., 4th Floor
Washington, D.C. 20002

ANTHONY A. WILLIAMS, Mayor, the District
of Columbia, and CAROLYN N. GRAHAM, Deputy
Mayor for Children and Families;
John A. Wilson Building
1350 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

CHARLES G. CURIE, Administrator, Substance
Abuse and Mental Health Services Administration,
Department of Health and Human Services, and the
SUBSTANCE ABUSE AND MENTAL HEALTH
SERVICES ADMINISTRATION, DEPARTMENT
OF HEALTH AND HUMAN SERVICES;
1 Choke Cherry Road
Room 8-1065
Rockville, Md. 20850

MICHAEL O. LEAVITT, Secretary, Department of
Health and Human Services, and the DEPARTMENT
OF HEALTH AND HUMAN SERVICES,
Hubert H. Humphrey Building
200 Independence Avenue, S.W.
Washington, D.C. 20201,

          **Defendants.**

CASE NUMBER  1:05CV01161

JUDGE: Ellen Segal Huvelle

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 06/09/2005

**Jury Demand**

## COMPLAINT

### Introduction and Summary

This is a case of cutting off the hand that fed you. Defendants Martha B. Knisley and the Department of Mental Health ("DMH") of the District of Columbia, having gotten an $8 million, six-year federal grant thanks in large part to the active participation of plaintiff Family Advocacy and Support Association ("FASA") in the grant application, and having sub-contracted with FASA to fund its programs under the grant, has embarked on a campaign to deny FASA those funds without notice or opportunity to be heard and in breach of the sub-contract. Although this campaign is aimed at FASA, it is inflicting significant, perhaps irreversible, injury on children and youth suffering from severe emotional disturbances and their families who need FASA's services. The principal claims are deprivation of property without due process, breach of contract, and interference with prospective economic advantage.

In 1974, the District of Columbia was sued because of its lack of community-based services for the care of individuals with mental illnesses. The situation deteriorated further over time, and this Court placed the District's mental health services in receivership from 1997 to 2001. Eventually, the District Government devised a comprehensive program, called D.C. Children Inspired Now Gain Strength ("D.C. CINGS") to deliver community-based mental health services to children and youth with severe emotional disturbances and reduce reliance on out-of-home and out-of-state residential treatment.

However, the District Government could not launch D.C. CINGS without federal funds. The District submitted several grant proposals to defendant Substantive Abuse and Mental Health Services Administration ("SAMHSA") of the defendant Department of Health and Human Services ("HHS") for a system-of-care grant for D.C. CINGS, but those proposals were

not funded largely because they did not involve parents and families. Finally, the District turned to FASA for assistance. FASA has been described by the federal government as "the primary family advocacy group in the District of Columbia over the past ten years for youth with serious emotional disturbances and their families," *see* Federal Site Visit Report on D.C. CINGS, dated November 15, 2004, at 20, and it was the recipient of a three-year Statewide Family Network grant from SAMHSA to improve services for children and youth with serious emotional disturbances. FASA agreed to assume a prominent role in D.C. CINGS.

With FASA written into the District's grant proposal as a sub-contractor and with a line item budget, the District re-applied for a system-of-care grant. In 2002 SAMHSA granted the application and awarded the District a six-year, $8,073,384 grant for D.C. CINGS. As a result, DMH entered into a sub-grant agreement with FASA providing for an annual payment by DMH to FASA over the course of the SAMHSA grant.

However, once DMH obtained federal funds for D.C. CINGS, it embarked on a campaign to deprive FASA of its contractual rights. For Year One of the D.C. CINGS grant, which began October 1, 2002, DMH did not make its contractual payment of $15,000 to FASA until August 8, 2003, only seven weeks before the end of the grant year. For Year Two of the grant, DMH did not make its contractual payment of $12,000 to FASA until the end of December 2004, nearly three months *after* the end of the grant year. For the current Year Three of the grant, DMH has not paid FASA *any* of the $50,000 it has contracted to pay. Moreover, on information and belief, FASA alleges that DMH intentionally and maliciously intervened with SAMHSA for the purpose of ensuring that FASA's own three-year SAMHSA grant would not be renewed, and that grant was not renewed. As a result of DMH's actions, none of which were preceded by notice to FASA or an opportunity to be heard, FASA was compelled to shut its office and move

its operations to the private home of its president.  Moreover, as SAMHSA pointed out in a site

visit report, DMH failed to assign FASA a prominent role in D.C. CINGS, although DMH had

represented in its grant application to SAMHSA that FASA would be the "key family

organization" in that project.

On April 28, 2005, the Director of DMH, defendant Martha B. Knisley, submitted to

SAMHSA a "revised" budget for Year Three of the D.C. CINGS grant that purports to eliminate

funding for FASA from D.C. CINGS.  Knisley also submitted a projected budget for Year Four

that purports to eliminate FASA from D.C. CINGS altogether.  Neither DMH nor Knisley gave

FASA notice of why this action has been taken or an opportunity to be heard about it.  As far as

FASA knows, Knisley's proposals are being reviewed by SAMHSA.

FASA brings this action for declaratory and injunctive relief, damages, and specific

performance.  It also seeks temporary injunctive relief to prevent irreparable injury to itself and

the children and their families whom it serves.

### Jurisdiction and Venue

1.      The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331

(federal question) and 28 U.S.C. § 1367(a) (supplemental jurisdiction).  The Court has personal

jurisdiction over the parties whose official locations are within the District of Columbia.

2.      Venue lies in this Court under 28 U.S.C. § 1391(b), (e).

### Parties

3.      Plaintiff FASA is a self-help, non-profit, support, education and advocacy

organization located in the District of Columbia.  Established in 1987, FASA is comprised of

parents, family members, and service providers dedicated to improving the quality of life for

children and youth with emotional, behavioral, and learning disabilities.

4.    Defendant Martha B. Knisley is the Director of DMH and the Principal Investigator of D.C. CINGS.  Defendant DMH is an agency of the District of Columbia.  DMH is responsible for providing mental health care services for adults, children, and youth in the District of Columbia.

5.    Defendant Anthony A. Williams is the Mayor of the District of Columbia, and Defendant Carolyn N. Graham is the Deputy Mayor for Children and Families.

6.    Defendant Charles G. Curie is the Administrator of defendant SAMHSA. Defendant SAMHSA is part of defendant HHS.  It was created in 1992 to focus attention, programs, and funding on assistance for people with or those at risk for mental and substance abuse disorders.

7.    Defendant Michael O. Leavitt is the Secretary of HHS.  Defendant HHS is a department within the United States Government.

**Factual Allegations**

8.    After being sued in 1974 for its lack of community-based services for the treatment of mental illnesses, *see Dixon v. Williams*, D.D.C., Civil Action No. 74-285, the District of Columbia established a plan to reorganize its mental health services.  *See* Final Court-Ordered Plan, dated March 28, 2001, at 1.  This plan created the Commission on Mental Health Services, which is now DMH.  *Id.*  However, when the District of Columbia repeatedly failed properly to implement phases of the plan to develop mental health services, plaintiffs from the earlier suit moved again in 1996 for this Court to order a receivership over D.C.'s mental health services in order to establish an integrated and comprehensive community-based system of care for mental health.  *Id.* at 2.  This Court thereafter placed the Commission on Mental Health Services, now DMH, in transitional receivership from 1997 to 2001.  *Id.*

9.      Dennis R. Jones, the court-appointed transitional receiver, wrote in his report that "[e]ffective services for children, youth and their family must be developed and organized by the new [DMH]. DMH must establish, through an interagency workgroup, a cross-systems approach to funding, policy making and establishment of a single system of care for children and youth with mental health needs . . . . Care management strategies, including streamlined, integrated service planning that meet the needs of children and youths and their families in a variety of settings, must be implemented across all systems of care." *See* Final Court-Ordered Plan, dated March 28, 2001, at 10.

10.      DMH decided to apply for a system-of-care grant from SAMHSA to implement the court-appointed receiver's recommendations. A that time, FASA had a nationally recognized reputation for its awareness and expertise in the children's mental health care movement in the District of Columbia. FASA also happened to be the only family advocacy group in the entire District of Columbia. Because DMH's application would be bolstered by the inclusion of the FASA name as a provider of services and of support to D.C. parents, FASA allowed DMH to include FASA as the key family organization in its initial application for a system-of-care grant. However, SAMHSA denied DMH's initial application, in part because the grant proposal did not provide a strong enough role for family involvement by FASA.

11.      Over the next several years, DMH applied three more times for a system of care grant from SAMHSA. The third application, which, unlike the first two applications, included a significant role for FASA, was approved by SAMHSA. However, that grant was later retracted because of a conflict of interest unrelated to FASA between a consultant used by DMH and the agency DMH used to draft the grant application.

12.     In 2002, when DMH made its fourth attempt to apply for a system of care grant, DMH again designated FASA as "the key family organization" in its application. *See, e.g.*, D.C. CINGS Grant Application at 20.  In this grant proposal, however, DMH relied heavily on FASA's reputation and experience in servicing the needs of children with severe emotional disturbances – referring to FASA throughout the application and including Ms. Morgan's résumé along with the résumés of other DMH officials as part of the application.  Due in part to this change in service providers, DMH successfully obtained a six-year grant from SAMHSA for its D.C. CINGS project in the total amount of $8,073,384 in federal funds.

13.     DMH's court-appointed receiver, Dennis Jones, in his 2002 year-end report, particularly praised the D.C. CINGS project as "progress in establishing a system of care for young people needing mental health services" and noted that "[t]he lack of comprehensive, District-based mental health services for the city's young residents has existed for decades and is cited as a significant reason why young people with mental health and substance abuse needs are a disproportionate population in the juvenile justice system." Department of Mental Health, Press Release, *Court Monitor Endorses DMH's Progress Toward Building DC's New Public Mental Health System*, October 10, 2003.

14.     The D.C. CINGS grant funded by SAMHSA targets the development of community-based systems of care to serve the needs of children with serious emotional disturbances.  *See* 42 U.S.C. § 299ff.  The six-year grant, lasting from September 30, 2002 to September 29, 2008, funds the D.C. CINGS project, the major goal of which is "to reduce reliance on out-of-home and out-of-state residential treatment centers for care of D.C. youth with [serious emotional disturbances] through the creation of a comprehensive array of community-

based services and supports to [sic] that are accessible, available, culturally appropriate and of high quality with families." D.C. CINGS Grant Application at 3.

15.     The DMH grant application for the D.C. CINGS project states explicitly that "the grant funding will be used to strengthen and build the capacity of the Family Advocacy and Support Association (FASA) . . . ." *See* D.C. CINGS Grant Application at 3. Throughout the application, DMH stated that it would rely on FASA to guide and support parents in their use of DMH's services for children with serious emotional disturbances. *See id.* at 3, 20, 21, 30, 59.

16.     As part of its application, DMH submitted a proposed budget and a budget line item justification for the six-year period of the grant. *See* D.C. CINGS Grant Application at 6-8f, 48-60. The budget and budget line item justification for disbursements to FASA for each of the six years of the grant are entitled "[c]ontractual" obligations. *Id.* For year 1, which began on October 1, 2002, and ended on September 30, 2003, the budget provides that "FASA will provide training and planning implementation at $15,000." *Id.* at 49. For year 2, which began on October 1, 2003, and ended on September 30, 2004, the budget provides that "FASA ($12,000) will continue to provide program training for families, staff, and child-serving agencies." *Id.* at 50. For year 3, which began on October 1, 2004, and will end on September 30, 2005, the budget provides that "FASA ($50,000) will continue to provide program training for families, staff, and child-serving agencies." *Id.* at 52. For year 4, the budget provides that "FASA ($75,000) will continue to provide program training for families, staff, and child-serving agencies." *Id.* at 53. The same is provided in the line item for year 5. Finally, for year 6, the budget provides that "FASA ($5,000) will continue to provide program training for families, staff, and child-serving agencies." *Id.* at 56.

17.    In 2003, DMH and FASA entered into a sub-grant agreement to implement the

goals of D.C. CINGS.  This agreement provides that, consistent with DMH's grant proposal, the

D.C. CINGS project "has identified the Family Advocacy and Support Association, Inc. (FASA)

as the designated state family agency, and as a direct recipient of funds under the project's

approved budget."  *See* Sub-Grant Awarded through the D.C. Children Inspired Now Gain

Strength Project (D.C. CINGS) to The Family Advocacy and Support Association, Inc. at 4.  The

agreement also provides that "[t]he amount of funding for each year is specified in the D.C.

CINGS budget proposal under the line item identified as FASA," and "[t]he approved budget for

each of the six years is included in Attachment A."  *Id.* at 2.  Finally, the agreement provides

that: "The first period [of D.C. CINGS] begins October 1, 2002 and ends September 30, 2003.  A

new annual sub-grant will be awarded for each of five successive years beginning October 1,

2003.  The last award period will begin October 1, 2007 and will end September 30, 2008."  *Id.*

FASA's obligations under the sub-contract are to use the sub-grant funds "to support activities

that are consistent with its mission as stipulated in its charter and the stated goals and principles

of the D.C. CINGS project and the system of care model endorsed by SAMHSA and to comply

with reporting and auditing requirements."  *Id.* at 3-5.  Nowhere in the agreement does it state

that FASA's funding is subject to unilateral revision or elimination by DMH.

18.    During the first year of the D.C. CINGS project, which ran from October 1, 2002,

to September 30, 2003, DMH did not disburse to FASA its first-year contractual allocation of

$15,000 until August 8, 2003, only seven weeks before the end of the project's first year.

19.    The "Notice of Sole Source Award" accompanying DMH's first-year allocation

of $15,000 to FASA for the D.C. CINGS project noted that "[t]he sub-grant will be renewed

each fiscal year contingent upon the renewal of the Cooperative Agreement [between DMH and

SAMHSA], the availability of federal funds, and the successful completion of activities specified under the sub grant award."

20.     DMH failed to disburse to FASA its second-year contractual allocation of $12,000 for the D.C. CINGS project during the project's second year, which ran from October 1, 2003, to September 30, 2004.

21.     In a letter dated December 20, 2004, to Austin A. Andersen, the Interim Inspector General for the District of Columbia, Knisley admitted that, although "by definition, sub-grants for a given fiscal year should be paid in that fiscal year," DMH failed to disburse to FASA its allocation of $12,000 during the second year of the D.C. CINGS project. *See* Letter of December 20, 2004, from Martha B. Knisley to Austin A. Andersen at 2.  Knisley said this failure probably was due to a "breakdown of internal DMH communications." *Id*.  In that same letter Knisley acknowledged that: "[T]he SAMHSA grant is subject to renewal by SAMHSA on an annual basis, and is further subject to the availability of federal funds.  Assuming those conditions precedent are met, then FASA would be entitled to receive sub-grant funds as set forth in the grant and any sub-grant agreement."  Knisley added that DMH and SAMHSA had "'agreed in principle' to fund a "'broader collaborative of families'" in the forthcoming years of the D.C. CINGS project, and that FASA's funding "may be affected," but she did not suggest or cite authority for altering or eliminating FASA's contractual entitlement to funding.

22.     FASA received its second-year contractual allocation of $12,000 for the D.C. CINGS project from DMH on December 28, 2004, three months after the end of the second year of the project.

23.     Since the beginning of the third (current) year of the D.C. CINGS project on October 1, 2004, and through today, FASA has not received any portion of its third-year

contractual allocation of $50,000 for the project. FASA has not been notified by DMH of any reason why it is has not received or why it is not entitled to receive this allocation, nor has FASA been given an opportunity by DMH to be heard on this matter.

24.     Beginning December 14, 2004, counsel for FASA has repeatedly contacted DMH's General Counsel requesting a meeting to discuss FASA's concerns over its funding for the D.C. CINGS project. However, DMH has not scheduled a meeting and has not discussed the matter with FASA's counsel.

25.     Since being first awarded its sub-grant in 2003, FASA has continued to provide programs and services to District of Columbia children and their families in accordance with its contractual obligations to DMH under the D.C. CINGS project. In particular, FASA has been a vigorous and outspoken advocate for children and youth with severe emotional disturbances and their families. FASA cannot continue to perform its duties without the funding DMH has refused to provide in a timely manner.

26.     On April 28, 2005, DMH submitted to SAMHSA a "Continuation Application" for the D.C. CINGS project. In a budgetary supplement to this application, DMH purports to eliminate funding for FASA for the third (current) year of the D.C. CINGS project by striking the line item budgetary allocation of $50,000 to FASA for the third year. In another budgetary supplement, DMH purports to eliminate FASA altogether from the fourth year of the D.C. CINGS project. DMH has not given FASA any notice why it has attempted to eliminate funding for FASA in the third (current) year of the D.C. CINGS project or why it has attempted to eliminate FASA altogether from fourth year of the project, nor has DMH afforded FASA an opportunity to be heard on these matters.

27.    In the description that follows the purportedly amended budget for the third (current) year of the D.C. CINGS project, DMH states: "The line item previously identified as FASA has been increased and the heading expanded to 'family education, advocacy training and TA' to include not just support to FASA, but also additional support for other family organizations and/or community-based efforts to provide expanded family education, advocacy support and/or technical assistance." However, the attached purported budget does not allocate *any* funds to FASA by name. Moreover, the description that follows the purportedly amended budget for the fourth year of the D.C. CINGS project makes no mention of FASA at all.

28.    FASA was awarded a Statewide Family Network Grant from SAMHSA for the years 2001-2004. FASA carried out its responsibilities under the grant throughout its duration and reapplied for another such grant in April 2004. However, this application was denied without satisfactory explanation.

29.    Upon information and belief, DMH officials intentionally and maliciously intervened with SAMHSA for the purpose of ensuring that FASA's application in April 2004 for another Statewide Family Network Grant would be denied, and SAMHSA wrongfully denied that application.

30.    The consequences of DMH's failure to fund FASA for the third (current) year already have manifested themselves. As a result of its lack of funding, FASA has been forced to close its offices at 1289 Brentwood Road, in Northeast Washington, D.C., and to relocate its operations to the home of its president, Phyllis Morgan. FASA now meets in Ms. Morgan's basement, which is grossly inadequate to meet the needs of the children and youth and their families that FASA serves.

31.    Before its DMH grant funding was stopped, FASA employed a project director, a secretary, and an administrative assistant.  However, FASA has been forced to let these staff members go.  Ms. Morgan, with the help of her son, are presently the only individuals carrying out FASA's operations.

32.    Due to lack of funding, FASA has been forced to stop its monthly mailings informing parents of upcoming FASA meetings and of other resources available to parents.

33.    Most importantly, lack of funding has left FASA unable to maintain the programs that it has previously provided to parents and children in the District of Columbia, including a biweekly after school children's program, as well as meetings and workshops for parents of children with emotional disabilities.

34.    Furthermore, FASA has been unable to pay for mental health experts and service providers to conduct workshops for FASA members and instead have had to rely on volunteers.

35.    FASA has also been unable to send parents to conferences, due to a lack of funding to pay the costs of transportation, conference fees, and childcare.

36.    FASA has had to suspend its planning for additional programs for parents.  In addition, FASA has had to suspend planning for its summer program for needy children, which in the past has consisted of tutoring, regular outings to museums, and other educational activities.

37.    If defendant SAMHSA approves DMH's "Continuation Application" to eliminate FASA from the D.C. CINGS project, notwithstanding FASA's contractual entitlement to six years of grant funds under the agreement, FASA's funding would be terminated entirely, and FASA would be forced to cease operations.

38.    On information and belief, defendant Mayor Williams and defendant Deputy Mayor Graham have supervisory authority over defendants Knisley and DMH and are

empowered to amend or rescind unlawful actions taken by them. However, defendant Mayor Williams and defendant Deputy Mayor Graham have neither amended nor rescinded the unlawful actions taken by defendants Knisley and DMH against FASA.

39.    On information and belief, defendants Curie, SAMHSA, Leavitt, and HHS have supervisory authority over the implementation of D.C. CINGS by defendants Knisley and DMH and are empowered to direct defendants Knisley and DMH to amend or rescind unlawful actions taken by them. However, defendants Curie, SAMHSA, Leavitt, and HHS have not directed defendants Knisley and DMH to amend or rescind their unlawful actions against FASA.

## COUNT ONE:  DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS

40.    FASA realleges paragraphs 1 through 39.

41.    FASA has a property interest in the sub-grant funds from DMH.

42.    By failing timely to fund FASA for its operations under the D.C. CINGS project and by purporting to eliminate funding for FASA in the third (current) year of the project and to eliminate FASA altogether from the fourth year of the project, without providing FASA with notice of the reasons for its actions and an opportunity to be heard, defendants are depriving or threatening to deprive FASA of its property interest in sub-grant funds for the D.C. CINGS project without due process of law, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

## COUNT TWO:  BREACH OF CONTRACT

43.    FASA realleges paragraphs 1 through 39.

44.    FASA is a third-party beneficiary of the D.C. CINGS agreement between DMH and SAMHSA for the D.C. CINGS project.

45.    DMH and FASA have a contractual agreement regarding the sub-grant of funds by DMH to FASA for the D.C. CINGS project.

46.    By failing timely to fund FASA for its operations under the D.C. CINGS project and by purporting to eliminate funding for FASA in the third (current) year of the project and to eliminate FASA altogether from the fourth year of the project, defendants Knisley, DMH, Mayor Williams, and Deputy Mayor Graham are breaching the D.C. CINGS agreement to which FASA is a third-party beneficiary and the sub-grant agreement between DMH and FASA.

## COUNT THREE:  PROMISSORY ESTOPPEL

47.    FASA realleges paragraphs 1 through 39.

48.    FASA has expended money and resources, purchased equipment, hired staff, and rented office space in reliance on DMH's promise to sub-grant funds to it for the performance of its obligations under the D.C. CINGS project.

49.    By failing timely to fund FASA for its operations under the D.C. CINGS project and by purporting to eliminate FASA and all funding for FASA from the D.C. CINGS project, DMH breached its promise to fund FASA upon which FASA relied to its detriment.

## COUNT FOUR:  INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

50.    FASA realleges paragraphs 1 through 39.

51.    By intentionally and maliciously intervening with SAMHSA for the purpose of persuading SAMHSA not to approve another Statewide Family Network Grant for FASA, defendant DMH has intentionally interfered with FASA's prospective economic advantage.

## JURY DEMAND

52.    FASA demands a jury trial in accordance with Fed.R.Civ. P. 38(b).

## PRAYER FOR RELIEF

53.    FASA prays that the Court issue temporary and permanent injunctive and declaratory relief enjoining defendants from taking any actions, or rescinding any actions already taken, that would eliminate FASA or funding for FASA from the D.C. CINGS project, temporarily or permanently, pending notice and an opportunity to be heard.

54.    FASA prays for an award of damages plus interest for all funds to which it was contractually entitled from DMH but which DMH has not disbursed in a timely manner.

55.    FASA prays for an order directing defendants Knisley, DMH, Mayor Williams, and Deputy Mayor Graham to specifically perform their contractual obligations.

56.    FASA prays for such other and further relief as the Court may deem just and fair.


Respectfully submitted,

_Neil H. Koslowe_ (D.C. Bar # 361792)
Cynthia P. Abelow (D.C. Bar # 488206)

SHEARMAN & STERLING LLP
801 Pennsylvania Avenue NW, Suite 900
Washington, D.C. 20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100

*Attorneys for Plaintiff*

Dated: June 8, 2005

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Family Advocacy and Support Association | Martha Knisley, Director, District of Columbia Department of Mental Health, et al. |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  11001 (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) Neil H. Koslowe        (202) 508-8000 Shearman & Sterling LLP 801 Pennsylvania Avenue NW, Suite 900, Washington, DC 20004 | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☒ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ G.  *Habeas Corpus/ 2255* | ☐ H.  *Employment Discrimination* | ☐ I.  *FOIA/PRIVACY ACT* | ☐ J.  *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K.  *Labor/ERISA (non-employment)* | ☐ L.  *Other Civil Rights (non-employment)* | ☐ M.  *Contract* | ☐ N.  *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

---

**V. ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7Appeal to District Judge from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

U.S. Constitution, Fifth Amendment -- violation of due process.  Breach of contract, promissory estoppel (pendent claims).

---

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS<br>☐   ACTION UNDER F.R.C.P. 23 | **DEMAND $** | Check YES only if demanded in complaint<br>**JURY DEMAND:** ☒ YES   ☐ NO |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) ☐ YES ☒ NO | If yes, please complete related case form. |
|---|---|---|

DATE  6/9/2005   SIGNATURE OF ATTORNEY OF RECORD   *Mel N. Klc*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.