IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAMILY ADVOCACY AND SUPPORT ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>MARTHA B. KNISLEY, Director, Department Of Mental Health of the District of Columbia, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. _____ |

## APPLICATION FOR A TEMPORARY RESTRAINING ORDER

Plaintiff Family Advocacy Support Association ("FASA") applies under Fed.R.Civ.P. 65 for a temporary restraining order in the form annexed to this motion. As shown in the accompanying certificate of counsel, actual notice of the time of making this application and copies of all pleadings filed in this action to date have been furnished to counsel for defendants, as required by LCvR 65.1(a). The reasons for this application are given in the accompanying memorandum and supporting declarations.[1]

Respectfully submitted,

_/s/ Neil A. Koslowe_
Neil H. Koslowe (D.C. Bar # 361792)
Cynthia P. Abelow (D.C. Bar # 488206)

SHEARMAN & STERLING LLP
801 Pennsylvania Avenue, N.W., Suite 900
Washington, D.C. 20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100

Dated: June 9, 2005

*Attorneys for Plaintiff*

---

[1] In accordance with LCvR 7.1(m), FASA's counsel repeatedly tried to meet with counsel for DMH to discuss the issues raised by this motion, but counsel for DMH did not respond to his requests for a meeting. *See* Attachment E to Morgan Dec.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAMILY ADVOCACY AND SUPPORT ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>MARTHA B. KNISLEY, Director, Department Of Mental Health of the District of Columbia, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

Plaintiff Family Advocacy Support Association ("FASA") is applying for a temporary restraining order to preserve the *status quo* in its dispute with defendants Martha B. Knisley *et al.* In 2002 defendant Department of Mental Health ("DMH") of the District of Columbia received a six-year, $8 million grant from defendant Substance Abuse and Mental Health Services Administration ("SAMHSA") for a comprehensive mental health services project called District of Columbia Children Inspired Now Gain Strength ("D.C. CINGS"). DMH and FASA entered into an agreement by which DMH committed to sub-grant project funds to FASA for services to children with severe emotional disturbances and their families during the six years of the project. But on April 28, 2005, Knisley asked SAMHSA to approve DMH's elimination of funding allocations for FASA in years three (the current year) and four of the project. Knisley and DMH did not afford FASA notice or an opportunity to be heard regarding this request which, if approved, will breach the agreement between DMH and FASA and inflict irreparable injury on FASA and the children and families whom FASA serves. FASA prays for an order preventing SAMHSA from approving the request and directing DMH to fund FASA on a *pro rata* basis.

## STATEMENT

1. After several unsuccessful applications, DMH applied for and received a six-year grant of $8,073,384 from SAMHSA in 2002 for the D.C. CINGS program, to "reduce reliance on out-of-home and out-of-state residential treatment centers for care of D.C. youth with [serious emotional disturbances] through the creation of a comprehensive array of community-based services and supports to [sic] that are accessible, available, culturally appropriate and of high quality with families." D.C. CINGS Grant Application at 3 (Attachment A to annexed Declaration of Phyllis Morgan ("Morgan Dec.")). DMH was awarded the grant largely because it assigned a significant role in D.C. CINGS to FASA. Morgan Dec. ¶¶ 5-6. FASA has been described by federal authorities as "the primary advocacy group in the District of Columbia over the past ten years for youth with serious emotional disturbances and their families." *Id.* ¶ 13.

In its grant application DMH said "the grant funding will be used to strengthen and build the capacity of [FASA]" and labeled FASA as "the key family organization" for D.C. CINGS. Attachment A to Morgan Dec. at 3, 20. The D.C. CINGS application also listed specific allocations by DMH to FASA for each grant year and described them as "[c]ontractual" obligations. *Id.* at 49, 50, 52, 53, 56. FASA was to receive $15,000 in year 1, $12,000 in year 2, $50,000 in year 3, $75,000 in years 4 and 5, and $5,000 in year 6. *Id.*

DMH and FASA entered into a sub-grant agreement governing their relationship in the D.C. CINGS project and confirming that the funding amounts listed in the grant application "will be awarded" by DMH to FASA. Sub-Grant Awarded Through the D.C. CINGS Project to FASA at 2 (Attachment B to Morgan Dec.). FASA is required to use these funds "to support activities that are consistent with its mission as stipulated in its charter and the stated goals and principles of the D.C. CINGS project and the system of care model endorsed by SAMHSA and to comply

2

with reporting and auditing requirements." *Id.* at 3-5. The Notice of Sole Source Award, FY 2003, that accompanied DMH's first sub-grant to FASA similarly noted that "[t]he sub-grant will be renewed each fiscal year contingent upon the renewal of the Cooperative Agreement [between DMH and SAMHSA], the availability of federal funds, and the successful completion of activities specified under the sub grant award." Attachment C to Morgan Dec.

2. During the first year of the D.C. CINGS project, which ran from October 1, 2002, to September 30, 2003, DMH did not disburse to FASA its first-year allocation of $15,000 until August 8, 2003, only seven weeks before the end of the project year. Morgan Dec. ¶ 8. DMH failed to disburse to FASA its second-year allocation of $12,000 during the project's second year, which ran from October 1, 2003, to September 30, 2004. *Id.* ¶ 9. In a letter dated December 20, 2004, to Austin A. Andersen, the Interim Inspector General for the District of Columbia, Knisley said this failure probably was due to a "breakdown of internal DMH communications." Attachment D at 2 to *Id.* In that same letter Knisley acknowledged that: "[T]he SAMHSA grant is subject to renewal by SAMHSA on an annual basis, and is further subject to the availability of federal funds. Assuming those conditions precedent are met, then FASA would be entitled to receive sub-grant funds as set forth in the grant and any sub-grant agreement." *Id.* FASA received its second-year allocation of $12,000 on December 28, 2004, three months after the end of the second year of the D.C. CINGS project. Morgan Dec. ¶ 10.

Since the beginning of the third (current) year of the D.C. CINGS project on October 1, 2004, and through today, FASA has not received *any* portion of its third-year allocation of $50,000. Morgan Dec. ¶ 11. FASA has never received any notice from DMH that FASA has failed to comply with its contractual obligations to DMH. *Id.* ¶ 12. Moreover, FASA has not been notified by DMH of any reason why it is has not received or why it is not entitled to receive

3

this allocation, nor has FASA been given an opportunity by DMH to be heard on this matter. *Id.* Nevertheless, FASA has continued to provide programs and services to District of Columbia children and their families in accordance with its contractual obligations to DMH. *Id.*

3. On April 28, 2005, Knisley, on behalf of DMH, submitted to SAMHSA for its review and approval a "Continuation Application" for the D.C. CINGS project. Attachment G to Morgan Dec. In a budgetary supplement to this application, DMH purports to eliminate funding for FASA for the third (current) year of the D.C. CINGS project by striking the line item allocation of $50,000 to FASA for the third year. *Id., compare* attachment D.i.-1 with attachment D.i.-2. In another budgetary supplement, DMH purports to eliminate FASA altogether from the fourth year of the D.C. CINGS project. *Id.* at attachment D.i.i.i.

In the description that follows the purportedly amended budget for the third (current) year of the D.C. CINGS project, DMH states: "The line item previously identified as FASA has been increased and the heading expanded to 'family education, advocacy training and TA' to include not just support to FASA, but also additional support for other family organizations and/or community-based efforts to provide expanded family education, advocacy support and/or technical assistance." Attachment G to Morgan Dec. at second unnumbered page after attachment D.i.-2. However, the attached purported budget does not allocate *any* funds to FASA by name. *Id.* at attachment D.i.-2. Moreover, the description that follows the purportedly amended budget for the fourth year of the D.C. CINGS project makes no mention of FASA at all. *Id.* at unnumbered page after attachment D.i.i.i.

DMH did not give FASA any notice why it has attempted to eliminate funding for FASA in the third (current) year of the D.C. CINGS project or why it has attempted to eliminate FASA altogether from fourth year of the project. Morgan Dec. ¶ 14. DMH also has not afforded FASA

4

an opportunity to be heard on these matters. *Id.* FASA does not know what, if any, action SAMHSA has taken on DMH's "Continuation Application."

## ARGUMENT

FASA meets the test for a temporary restraining order preserving the *status quo* because it can demonstrate (i) a substantial likelihood it will succeed on the merits of its lawsuit, (ii) irreparable injury, (iii) no countervailing harm to defendants, and (iv) the issuance of injunctive relief serves the public interest. *Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 303 & n. 2 (D.C. Cir. 2001) (holding "the same factors apply in evaluating requests for preliminary injunctions and temporary restraining orders"); *Fund for Animals v. Norton*, 281 F.Supp.2d 209, 219 (D.D.C. 2003). Therefore, the Court should (i) enjoin defendants from eliminating funding for FASA under the D.C. CINGS project and (ii) direct DMH to fund FASA for the current year on a *pro rata* basis, disbursing to FASA $37,500 for the nine months during which FASA has continued to provide services in accordance with its contractual obligations to DMH.

I.  **FASA is Likely to Succeed on the Merits of its Claim that the D.C. Defendants are Depriving FASA of its Property Without Due Process and They Have Breached the D.C. CINGS Agreement and the Sub-Grant Agreement Between DMH and FASA**

   a.  **FASA has a property interest in funds from DMH under the D.C. CINGS agreement and the sub-grant agreement between DMH and FASA.**

FASA has a property interest in the D.C. CINGS sub-grant funds from DMH. Property interests "are secured by 'existing rules or understandings.'" *Perry v. Sindermann*, 408 U.S. 593, 601 (1972); *Board of Regents of States Colleges v. Roth*, 408 U.S. 564, 577 (1972). "[A] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at the hearing." *Perry*, 408 U.S. at 601. The relevant documents and the

5

parties' mutual understandings and working relationship support FASA's property interest in the sub-grant funds for the D.C. CINGS project.

First, DMH acknowledged in its approved grant application for the D.C. CINGS project that "the grant funding will be used to strengthen and build the capacity of the Family Advocacy and Support Association (FASA)." Attachment A to Morgan Dec. at 3. It also expressly referred to the listed allocations of sub-grants to FASA as "[c]ontractual" obligations. *Id.* at 49, 50, 52, 53, 56. Second, the sub-grant agreement between DMH and FASA confirms that the funding amounts listed in the approved grant application for the D.C. CINGS project "will be awarded" to FASA in each of the six years of the project. Attachment B to Morgan Dec. Third, the Notice of Sole Source Award issued by DMH with its first sub-grant to FASA said that the sub-grant "will be renewed each fiscal year" of the D.C. CINGS project, contingent only on the availability of federal funds and FASA's successful completion of its obligations. Attachment C to Morgan Dec. Those contingencies have been satisfied. Finally, Knisley acknowledged that, assuming the availability of federal funds, "FASA would be entitled to receive sub-grant funds as set forth in the grant and any sub-grant agreement." Attachment D to Morgan Dec. at 2.

Taken together, these documents and the parties' mutual understandings establish FASA's property interest in the sub-grant funds from DMH. *See Nat'l Juvenile L. Ctr. v. Regnery*, 738 F.3d 455, 459 (D.C. Cir. 1984) (per curiam) ("an expectation interest sufficient to amount to a liberty or property interest under the due process clause in continuation funding ... [could] arise from some promise that the government made to them at some time in the course of their relationship"); *Dobkin v. Johns Hopkins Univ.*, 1994 U.S. Dist. LEXIS 5165, at *14 (D. Md. Jan 25, 1994) (denying motion to dismiss where plaintiff alleged representation of multi-year award on the grounds that the practice of automatic renewal of grants, "so long as [grantees]

materially complied with their awards," may show that grantees have "a constitutionally protected property interest in the renewal of the [grants]").

    b.    **The deprivation of its allocated funding without notice and opportunity to present objections deprives FASA of its property without due process**.

FASA is entitled to notice and a hearing before being deprived of its property interest in the sub-grant funds from DMH. As the Supreme Court has held, "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting from *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). The "root requirement" of the Due Process Clause of the Fifth Amendment, which applies to all defendants in this case (*Bolling v. Sharpe*, 347 U.S. 497, 500 (1953)), is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971). *Accord, e.g., James Madison Ltd., by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *Savage v. Scales*, 310 F.Supp.2d 122, 134 (D.D.C. 2004); *Nat'l Ass'n of Psychiatric Treatment v. Mendez*, 857 F.Supp. 85, 94-95 (D.D.C. 1994). Moreover, before terminating an interested party's property interest, an "agency must make findings that support its decision, and those findings must be supported by substantial evidence." *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962).

DMH did not give FASA any notice regarding DMH's failure to disburse to FASA in a timely manner its allocation of sub-grant funds for the D.C. CINGS project during the first two years of the project, its failure to disburse *any* sub-grant funds to FASA in the current year, and its attempt to eliminate funding for FASA in the current year and next year. DMH also did not make any findings to support its effort to terminate FASA's funding. Therefore, the actions of

Knisley and DMH deprive FASA of its property without due process, in violation of the Due Process Clause.

    c.    **The D.C. defendants breached the D.C. CINGS and sub-grant agreements.**

The same documents that establish that FASA has a property interest in the sub-grant funds from DMH establish that Knisley and DMH have breached the D.C. CINGS agreement between DMH and SAMHSA, to which FASA is a third-party beneficiary, and the sub-grant agreement between DMH and FASA. The approved D.C. CINGS grant application expressly described the allocations to FASA in each of the six years of the project as "[c]ontractual" obligations. Attachment A to Morgan Dec. at 49, 50, 52, 53, 56. This provision plainly is for the benefit of FASA and renders FASA a third-party beneficiary of the D.C. CINGS agreement between DMH and SAMHSA. The sub-grant agreement between DMH and FASA confirms that the funding amounts listed in the approved grant application for the D.C. CINGS project "will be awarded" to FASA in each of the six years of the project. Attachment B to Morgan Dec. The Notice of Sole Source Award issued by DMH with its first sub-grant of funds to DMH said the sub-grant "will be renewed each fiscal year" of the D.C. CINGS project, contingent only on the availability of federal funds and FASA's successful completion of its obligations. Attachment C to Morgan Dec. Finally, Knisley acknowledged that, assuming the availability of federal funds, "FASA would be entitled to receive sub-grant funds as set forth in the grant and any sub-grant agreement." Attachment D to Morgan Dec. at 2.

These provisions contractually bind DMH to provide sub-grants to FASA in the amounts listed in the D.C. CINGS approved application for each of the six years of that project, subject only to the availability of federal funds and FASA's successful completion of its obligations. There can be no dispute that SAMHSA has made available federal funds to DMH for the

operation of the D.C. CINGS project during its third year. And none of the defendants has suggested that FASA has failed successfully to complete its obligations under the D.C. CINGS project. Therefore, the actions by Knisley and DMH in failing to fund FASA during the current year of the D.C. CINGS project, and attempting to terminate FASA's funding for the current and following years, constitutes a breach of contract.

In sum, FASA is likely to succeed on the merits of its claims that defendants deprived it of its property interest in the DMH sub-grant funds and breached the D.C. CINGS agreement and the sub-grant agreement between DMH and FASA. Thus, FASA has satisfied the first element of the test for a temporary restraining order.[1]

## II. FASA and the Children and Youth and Families Whom it Serves are Suffering and will Continue to Suffer Irreparable Injury as a Result of Defendants' Actions

The failure of DMH to provide FASA with its allocated funding has severely damaged FASA's ability to provide desperately needed services to local children and youth with severe emotional disturbances and their families. Morgan Dec. ¶¶ 15-26. FASA has had to curtail many programs offered in the past. *Id.* Unable to pay its rent, FASA had to close its offices on Brentwood Road, in Northeast Washington D.C., and relocate its operations to the basement of the home of Phyllis Morgan, its president. *Id.* In the absence of a temporary restraining order, FASA will be unable to continue to provide its services to at-risk children and youth and may be forced to close its operations. *Id.*

The real injury caused by the forced curtailment of FASA's programs has been, and will continue to be, borne by the children and parents whom FASA has served over nearly twenty

---

[1] FASA also alleges that the D.C. defendants are liable on a theory of promissory estoppel and for interfering with FASA's prospective economic advantage by intentionally and maliciously seeking to persuade SAMHSA not to award FASA a new Statewide Family Network Grant. *See* Complaint, ¶¶ 29, 47-51. FASA is likely to prevail on those claims as well. *See Simard v. Resolution Trust Corp.*, 639 A.2d 540, 552 (D.C. 1994); *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 288 (D.C. 1977).

years. For many of these families, the undoing of progress made through participation in FASA's programs would be devastating. As one FASA parent who has cared for four special needs children avers:

> If my grandchildren Donte, Dana, Tavonne, and Pernice are not able to take part in the FASA's programs – including the summer program this summer – I do not know what activities they will participate in. I work full-time, and thus cannot supervise them during the day. I am afraid that they are reaching the age where they can be exposed to very negative elements in the community, and that without FASA, they will not have anything positive to look forward to over the summer to buffer or soften the harsh realities that they must face.

Declaration of Lavohnee Cade at ¶ 16 (annexed).

Another FASA parent, who has cared for two special needs children and has participated in FASA since 1999, explains the urgent need for FASA to receive its allocated funding, so that it can plan and conduct its summer program:

> If FASA is not able to run its summer program, my children Danae and Diamond will not have the needed assistance and guidance to help motivate them through the summer months while they are out of school and I am at work. They may have a set back to what they see other children doing who do not receive the services that have been provided to Danae and Diamond.

Declaration of June Cash at ¶ 21 (annexed). She also expresses what must be the greatest fear of any parent who has watched a special needs child make excruciatingly difficult progress: regression. "If FASA is unable to continue its programs, I am afraid that all the progress that my children have made with the help of FASA could be undone." *Id.*

Yet another parent expressed the same concern, stating, "I have seen firsthand how FASA has helped my granddaughter Jessica to overcome her learning difficulties. I fear that if FASA is not able to continue its programs, Jessica will regress, and may lose some of the progress that she has made through FASA.." Declaration of Agnes Chase at ¶ 17 (annexed).

Once undone, there is no certainty that the children whose development is at stake would be able to repeat the difficult progress that they had previously made through FASA, especially if FASA is unable to continue functioning due to a withholding of allocated funding.

In addition to its programs for children with special needs, the cancellation of FASA's summer trainings for parents of these children will also result in irreparable injury to these parents and their children. Morgan Dec. ¶¶ 22-23. Summer trainings for parents of children with special needs are especially important, because school placement of these children is a critical need for their educational development. *Id.* Without guidance on the placement process, parents often have found that their children have not been appropriately placed by the District of Columbia public schools due to their special needs, or that their children's special transportation arrangements have not been made. *Id.* As a result, the parents must miss work in order to arrange appropriate placement or transportation for their children, and the children miss school while the appropriate placement or transportation arrangements are worked out. *Id.* If FASA is unable to conduct its summer training sessions for parents, the past practice of the D.C. public schools makes it highly likely that some of the children whose parents would have attended FASA's summer trainings will not have placement or transportation arrangements, and as a result these children will miss school days and their parents will be forced to miss work in order to attempt to correct the placement or transportation inadequacies. *Id.*

Thus, without temporary injunctive relief, FASA and the children and youth and families whom it serves face irreparable injury as a result of defendants' actions. For this reason alone the Court should grant FASA's application for a temporary restraining order.

III.  **Granting the Temporary Restraining Order Will Not Harm Defendants and Serves the Public Interest.**

Finally, granting the temporary restraining order will not harm defendants. The order requested by FASA merely would prevent defendants from changing the *status quo* and require them to adhere to their constitutional and contractual obligations to continue to fund FASA for the services it is providing under the D.C. CINGS project. It cannot be harmful to defendants to obey the law. And granting the temporary restraining order manifestly serves the public interest, by allowing FASA to continue to provide services to children and youth and their families.

## CONCLUSION

For the foregoing reasons FASA respectfully requests that the Court grant its application for a temporary restraining order.

                                    Respectfully submitted,

                                    /s/ Neil H. Koslowe
                                    _____
                                    Neil H. Koslowe (D.C. Bar # 361792)
                                    Cynthia P. Abelow (D.C. Bar # 488206)[2]

                                    SHEARMAN & STERLING LLP
                                    801 Pennsylvania Avenue, N.W., Suite 900
                                    Washington, D.C. 20004
                                    Telephone: (202) 508-8000
                                    Facsimile: (202) 508-8100

                                    *Attorneys for Plaintiff*

Dated:  June 9, 2005

---

[2]   Ms. Abelow is a candidate for admission *pro hac vice* in this case.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FAMILY ADVOCACY AND SUPPORT ASSOCIATION,** )<br>)<br>)<br>  Plaintiff,                                 )<br>)<br>  v.                                           )<br>)<br>**MARTHA B. KNISLEY, Director, Department** )<br>**Of Mental Health of the District of Columbia,** *et al.*, )<br>)<br>  Defendants.                                  )<br>_____)  | **Civil Action No. _____** |

## ORDER

The Court, having considered the application of plaintiff Family Advocacy Support Association ("FASA") for a temporary restraining order and finding that the application meets the requirements for its issuance, ORDERS as follows:

1. Defendants shall take no actions to eliminate funding for FASA under the "D.C. CINGS" project during the current or fourth years of the project, until further order of the Court. If defendants already have taken actions to eliminate such funding, they shall rescind those actions, and those actions shall be deemed null and void, until further order of the Court.

2. Defendants Knisley and DMH shall, within three business days of today, disburse to FASA $37,500 for services rendered in the "D.C. CINGS" project from October 1, 2004, through the end of June 2005. Defendants Knisley and DMH shall continue to fund FASA for such services on a *pro rata* basis until further order of the Court.

_____
United States District Judge

Dated: _____

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing Application for Temporary Restraining Order and Memorandum of Law in Support of Plaintiff's Application for a Temporary Restraining Order have been hand delivered on this 9th day of June 2005 to the following:

Anthony A. Williams
Mayor, the District of Columbia
John A. Wilson Building
1350 Pennsylvania Avenue, N.W.
Washington, DC 20004

&

Robert Spagnoletti
Attorney General of the District of Columbia
1350 Pennsylvania Avenue NW, Suite 409
Washington, DC 20004

For the following defendants:

- Martha B. Knisley, Director,
  Department of Mental Health of
  the District of Columbia
  64 New York Avenue, N.E., 4th Floor
  Washington, DC 20002

- Department of Mental Health of
  the District of Columbia
  64 New York Avenue, N.E., 4th Floor
  Washington, DC 20002

- Anthony A. Williams
  Mayor, the District of Columbia
  John A. Wilson Building
  1350 Pennsylvania Avenue, N.W.
  Washington, DC 20004

- Carolyn N. Graham
  Deputy Mayor for Children and Families
  John A. Wilson Building
  1350 Pennsylvania Avenue, N.W.
  Washington, DC 20004

Kenneth L. Wainstein
U.S. Attorney for the District of Columbia
555 4th Street, N.W.
Washington, DC 20530

For the following defendants:

- Charles G. Curie, Administrator
  Substance Abuse and Mental Health
  Services Administration
  Dept. of Health and Human Services
  1 Choke Cherry Road, Room 8-1065
  Rockville, MD 20850

- Substance Abuse and Mental Health
  Services Administration
  Dept. of Health and Human Services
  1 Choke Cherry Road, Room 8-1065
  Rockville, MD 20850

- Michael O. Leavitt, Secretary
  Dept. of Health and Human Services
  Hubert H. Humphrey Building
  200 Independence Avenue, S.W.
  Washington, DC 20201

- Dept. of Health and Human Services
  Hubert H. Humphrey Building
  200 Independence Avenue, S.W.
  Washington, D.C. 20201

_/s/ Cynthia P. Abelow_
Cynthia P. Abelow