UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
FAMILY ADVOCACY AND SUPPORT         )
ASSOCIATION                         )
                                    )
            Plaintiff,              )
                                    )
        v.                          )          Civil Action No. 05-1161 (ESH)
                                    )
MARTHA B. KNISELY, *et al.*,        )
                                    )
            Defendants.             )
_____)

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO
PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER

The defendants herein (collectively, "the District"), by and through undersigned counsel

pursuant to LCvR 65.1(c), hereby submit this Memorandum of Points and Authorities in

Opposition to Plaintiff's Application for a Temporary Restraining Order.

Plaintiff has failed to show that it is entitled to emergency injunctive relief; indeed, the

record shows that, contrary to plaintiff's implications, the District warned plaintiff early and

often about plaintiff's lax accounting, so any recent "reliance" on what plaintiff claims are

District "promises" is clearly unreasonable. The Court should deny the requested relief because

plaintiff does not have a contract with the District, plaintiff's claims are substantively meritless,

and plaintiff's claims are entirely local in character. This Court should not exercise jurisdiction

here.

## II. Factual and Procedural Background

In 2002, the District of Columbia, through its Department of Mental Health ("DMH"), was awarded a multi-year grant by the U.S. Department of Health and Human Services ("HHS") through its Substance Abuse and Mental Health Services Administration ("SAMHSA") to establish D.C. Children Inspired Now Gain Strength ("DC CINGS"), a program to provide comprehensive community mental health services for children and their families. Plaintiff's Memorandum ("P.Mem.") at 1; Plaintiff's Exhibit No. ("PEx.") A; District's Exhibit No. ("DCEx.") 1 at 1.[1] DMH awarded plaintiff FASA funds as a "subgrantee" under the grant. PEx. D at 1.

Over a year ago, DMH became concerned with the financial practices of FASA, and requested records from FASA. DCEx. 2 (letter of Apr. 5, 2004). DMH subsequently performed an audit on the records received from FASA. DCEx. 3 (audit report of Aug. 9, 2004). That audit revealed a number of accounting irregularities on FASA's part, including a failure timely to file quarterly reports (which themselves were incomplete), *id.* at 1–2, a number of checks written directly to FASA principals (a "highly unusual practice") or made out to "Cash," *id.* at 2, and the expenditure of almost half the grant funds on a FASA "board retreat." *Id.*

On August 27, 2004, DMH sent a copy of the audit to FASA, and requested a response in light of the audit's results. DCEx. 4.[2] A copy of the letter and audit was also sent to SAMHSA.

---

[1]    The District does not admit the allegations of the Complaint or plaintiff's application except for the purposes of this opposition.

[2]    The August 27, 2004, letter from DMH to FASA—standing alone—contradicts the foundation of plaintiff's complaint, that "FASA has never received any notice from DMH indicating that FASA has failed to comply with its obligations under its sub-contract [sic] with DMH, nor has FASA been given an opportunity to be heard . . . ." Morgan Decl. ¶ 12. *See, e.g., American Tower v. Williams*, 146 F. Supp. 2d 27 (D.D.C. 2001), *aff'd without opinion*, 50 Fed. Appx. 448 (D.C. Cir. 2002):

*Id*. at 2. The letter expressly informed FASA that additional "funding *will not be available* until the issues and concerns are resolved and a plan of corrective action that includes training and technical assistance is in place." *Id*. at 1 (emphasis added).

Subsequently, the D.C. Office of the Inspector General ("OIG") began an investigation regarding FASA's use of the grant funds. PEx. D. DMH responded to the OIG's request for information by letter dated December 20, 2004, in which DMH indicated that, while FASA had been a subgrantee, there was no signed agreement between those two parties. *Id*. Additionally, the letter notified the OIG that DMH and SAMHSA had agreed in principle to change the terms of the grant award to DC CINGS, reducing FASA's role. *Id*. at 2.[3] A copy of the letter was also provided to FASA. *Id*. at 3.

FASA met with DMH in May of 2005, and requested payment for "invoices" for work done; DMH informed FASA that there was no contractual arrangement between the parties for the period in question. DCEx. 5 (Declaration of Shauna Spencer, dated June 10, 2005 ("Spencer Decl.")) at ¶ 8. DMH also informed FASA at that meeting, as per the terms of the August 27, 2004, letter, if "appropriate financial and legal procedures were in place," DMH would resume discussions with FASA regarding a role for FASA in the DC CINGS project.

---

Although the procedure provided was not extensive as plaintiff would have liked, and while plaintiff disagrees with the facts and law upon which the District relied . . . the District gave [plaintiff] sufficient notice and opportunity to be heard at a meaningful time and in a meaningful manner, which is all that due process requires.

*Id*. at 33 (*citing Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)) (additional citations omitted)).

[3]    PEx. F, a letter dated November 15, 2004, from SAMHSA to DMH, evidences such an agreement, as SAMSHA references the DMH-proposed reduced role of FASA without objection. *Id*. at 5.

Plaintiff FASA filed the instant suit and request for emergency injunctive relief on or about June 8, 2005.

### III. Argument

*Plaintiff Fails to Qualify for Emergency Injunctive Relief.*

In order to obtain a preliminary injunction, plaintiff must satisfy *each* prong of the following four-part test: (1) there is a substantial likelihood of success on the merits; (2) plaintiff will suffer irreparable harm should the relief be denied; (3) an injunction would not substantially injure other interested parties; and (4) the public interest will be furthered by the issuance of the requested order. *Mova Pharmaceuticals Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (*quoting CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958).

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (emergency injunctive relief "is an extraordinary remedy that should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion.") (*citing Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (interim injunctive relief is "an extraordinary and drastic remedy")).

While a strong showing on one of the four factors may make up for a weaker showing on another, *Serono Labs. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998), a particularly weak showing on one factor may be more than the other factors can "compensate" for. *Taylor v. RTC*, 56 F.3d 1497, 1506 (D.C. Cir. 1995), *amended on other grounds on reh'g.*, 66 F.3d 1226 (D.C. Cir. 1995).

Plaintiff fails to make the required "clear showing," much less a satisfactory showing on all of the four factors, hence its application for a TRO should be denied.

*The Court Should Not Exercise Jurisdiction Here.*

The underlying premise of this dispute is apparently that plaintiff has an "agreement" with the District, which has either "breached" that agreement, or is about to, or both. But whether or not some sort of legally enforceable agreement exists between the District and plaintiff is a question of *local* law, a simple matter of contracts jurisprudence, which obviously is of preeminent importance to District government. Further, it appears that the only reason the federal government—the source of the disputed grant funds—was named here was in an attempt to bootstrap plaintiff into federal court. A review of plaintiff's Application here fails to reveal a *single* allegation of wrongdoing on the part of *any* federal entity; if plaintiff's theory of jurisdiction were correct, every "breach" of an agreement utilizing federal funds would be a presumptive violation of "due process" and entitle parties to proceed directly to federal court, which would soon be overwhelmed with litigation. Federal jurisdiction is not so swiftly nor easily obtained. *See, e.g., Women's Develop. Corp. v. City of Central Falls*, 986 F.Supp. 786, 789 (D. R.I. 1997) ("Federal courts have been reluctant to extend federal protection of state-law rights against invasion by state actors, as [plaintiff] suggests this court should do, to the breaking point at which every contract breach by a public entity gives rise to a civil rights claim by the aggrieved party.") (*citing Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1299 (3rd Cir. 1991)).

The Court should *not* exercise supplemental jurisdiction over the local-law claims, which are at the heart of plaintiffs' suit. *Barwood v. District of Columbia*, 202 F.3d 290, 296 (D.C. Cir. 2000) (a federal court abuses its discretion when it exercises supplemental jurisdiction over

local-law claims which "substantially predominate" over federal claims); *Grano v. Barry*, 733 F.2d 164, 169 (D.C. Cir. 1984) (Circuit dissolved injunction; "Appellees' remedy, if any, lies in the courts of the District of Columbia."); *cf. Women Prisoners of the District of Columbia Dept. of Corrections v. District of Columbia*, 93 F.3d 910, 921 (D.C. Cir. 1996) (district court may consider local-law claims because federal claims "were substantial enough to confer subject matter jurisdiction on the court . . . ."), *cert. denied*, 520 U.S. 1196 (1997).

Plaintiff's claims here are not substantial enough to confer subject matter jurisdiction on the Court.

Finally, to the extent plaintiff's due process claim is based on an "entitlement" to the federal funds granted to the District, it fails. In a similar case from another jurisdiction, a local non-profit group sued a state agency, alleging that the agency had improperly terminated it, after an audit, from receiving passed-through federal grants designated to provide poverty-relief services. *Guilford County Community Action Program, Inc. v. Wilson*, 348 F.Supp.2d 548, 550 (M.D.N.C. 2004). The group sued under 42 U.S.C. § 1983, alleging a violation of due process. *Id.* at 551. The court dismissed the claim, finding that the only arguable law under which the organization might have had a property right to continued funding was the *federal* law establishing the grant program, which was insufficient to create a legitimate *federal* claim of entitlement to that funding. *Id.* at 562.[4] Moreover, said the court, there was no explicit private right of action under that federal statute for entities such as the organization. "[I]n legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance, but rather action

---

[4]        *See also infra* at 12 (property interests stem not from the Constitution, but from local law).

by the Federal Government to terminate funds to the State." *Id*. at 555 (*quoting Pennhurst State*

*Sch. & Hosp. v. Halderman*, 451 U.S. 1, 28 (1981)).

Here, plaintiff does not even cite the federal grant statute implicated here, much less

reference the specific language necessary to invoke the jurisdiction of this Court.

> As previously noted, a statute must provide a clear right to some intended
> beneficiary in order for a private right of enforcement to exist. The fact, however,
> that some individuals may receive benefits from the statute is a different question
> than whether the statute was *intended* to benefit that group of plaintiffs.

*Guilford County*, 348 F.Supp.2d at 558 (emphasis in original) (*citing Gonzaga Univ. v. Doe*, 536
U.S. 273, 284 (2002)) (further citations omitted).

Here, whatever possible federal claims exist pale in comparison to the predominantly local

law claims at issue. The Court should not exercise supplemental jurisdiction here.


A.    Plaintiff Fails to Establish A Substantial Likelihood of Success On the Merits.


*1.    There is No "Contract" Here.*

Plaintiff cannot show the existence of a contractual relationship between it and the

District because of the absence of an enforceable agreement. *See Novecon, Ltd. v. Bulgarian-*

*American Enterprise Fund*, 190 F.3d 556, 563 (D.C. Cir. 1999), *cert. denied*, 529 U.S. 1037

(2000) (interpreting District contract law and affirming trial court's grant of summary judgment

to defendant on claim of breach of contract because of the absence of an enforceable agreement).

The District of Columbia Procurement Practices Act ("PPA") (D.C. Law 6-85, 36 D.C. Reg.

7396), *codified as amended* at D.C. Official Code §§ 2-301.01 *et seq*. (2004 Supp.), established the

District of Columbia Contract Appeals Board ("CAB") as the *exclusive* tribunal for contract disputes with the District of Columbia government. *Id*. at § 2-309.03.[5]

The PPA specifically prohibits District payment to any contractor without a valid, written contract. *Id*. at § 2-301.05(d)(1). The PPA requires a contract in writing, *id*. at § 2-301.07(13), signed by a duly authorized contracting officer. *Id*. at § 2-301.07(15).[6]

In addition, the PPA provides that contracts entered into in violation of the law's requirements are void. *Id*. at § 2-302.05(d)(1). *Cf. RDP Development Corp. v. District of Columbia*, 645 A.2d 1078, 1083 (D.C. 1994) (formal written contract might not be strictly necessary, if parties acted in good faith and there was substantial compliance with provisions of PPA and its regulations).

The PPA imposes substantial limitations on the authority of District officers or employees to enter into contracts on behalf of the District. *See*, *e.g.*, D.C. Official Code § 2-301.05(a) ("Except as otherwise provided in this chapter, no other department, agency, or instrumentality, or employee subject to the provisions of this chapter [other than the Office of Contracting and Procurement] shall exercise procurement or contracting authority . . . ."). More

---

[5]      This Court similarly lacks jurisdiction, to the extent plaintiff claims a "contract" with HHS. If so, FASA would first have to secure a final, written decision from HHS' contracting officer, 41 U.S.C. § 605(a), and either appeal it to the appropriate contract appeals board, *id*. at § 607(d), or, in the alternative, bring an action in the United States Claims Court, *id*. at § 609(1).

[6]      While DMH is independent from the oversight of the Office of Contracting and Procurement, it must still comply with the other provisions of the PPA cited herein. *See* D.C. Official Code § 2-303.20(p); § 7-1131.04(15) (2004 Supp.).

specifically, the PPA prohibits payment for the value of goods and services rendered without benefit of a valid written contract. D.C. Code § 2-305(d)(1).[7]

Although plaintiff devotes only part of one footnote to its "promissory estoppel" claim, P.Mem. at 9 n.1, case law is clear that claims in estoppel against the government are not available where a contract is illegal. *See, e.g., Office of Personnel Management v. Richmond*, 496 U.S. 414, 420 (1990) and *Heckler v. Community Health Serv.*, 467 U.S. 56, 60 (1984).

Moreover, plaintiffs cannot prove their minimally pleaded "promissory estoppel" theory here, as case law mandates that "[w]hatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Federal Crop Insur. Corp. v. Merrill*, 332 U.S. 380, 384 (1947); *Richmond*, 496 U.S. at 420; *Heckler*, 4467 U.S. at 61. *See also Chamberlain v. Barry*, 606 A.2d 156, 159 (D.C. 1992) ("A person making or seeking to make a contract with [the District] is charged or imputed with knowledge of the scope of the agency's authority."); *District of Columbia v. McGregor Properties, Inc.*, 479 A.2d 1270, 1273 (D.C. 1984) ("The [official's] letter did not constitute a promise, and even if it did, [plaintiff] could not reasonably have relied upon it given its imputed knowledge of the

---

[7]     In 1997, the Council amended the PPA to provide for severe sanctions against District officials who purport to contract for goods and services for the District without a valid written contract. Such conduct "shall be cause for termination of employment of the District employee." D.C. Code § 2-301.05(d)(2). In addition, the amendment made it clear that the Council was not going to pass any more special legislation to bail out vendors who had provided goods or services without a valid written contract. Henceforth, such vendors "shall not be paid." D.C. Code § 2-301.05(d)(3).

      Finally, District regulations—uncited by plaintiff—clearly differentiate between procurements (which must follow the strictures of the PPA) and grants, further demonstrating that, regardless of the characterization of the "agreement," if any, between the District and plaintiff, this case rests entirely on, and derives from, *local* law. *See* D.C. Mun. Reg. Tit. 1, Ch. 50 ("Subgrants to Private and Public Agencies") (2005).

[official's] lack of authority."); *Coffin v. District of Columbia*, 320 A.2d 301, 305 (D.C. 1974) (Even without a formal, written contract, "[i]t is well recognized that a would-be contractor with a municipal corporation is deemed imputed with knowledge as to the scope of the contracting agent's authority.").

Plaintiff must therefore be imputed with knowledge of the scope of the referenced District officials' authority (assertedly none) to bind the District without a formal written agreement. *McGregor Properties*, 479 A.2d at 1273 (*citing Coffin*, 320 A.2d at 303).

To the extent that plaintiff might claim that District officials acted outside their authority, this argument would fail as well. *See Heckler*, 467 U.S. at 63–64 ("[T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to the law. [R]espondent had a duty to familiarize itself with the legal requirements . . . .").

Even if the referenced sub-grant agreements are "contracts," although plaintiff has not produced any evidence to support such a proposition (such as any document with both FASA and DMH's authorized signatures), it is well established that such contracts can be terminated for the convenience of the District, with limited damages available to the contractor. The District's authority to terminate contracts for convenience is a powerful tool, subject to few restrictions. *District of Columbia v. Organization for Environmental Growth, Inc.*, 700 A.2d 185, 199-201 (D.C. 1997) ("*OFEGRO*")[8]; *see also Abia-Okon v. District of Columbia Contract Appeals Bd.*,

---

[8]    The "termination for the convenience of the government" clause arose from the procurement efforts that accompany major wars. Commentators' analysis of case law on the topic indicates a virtually unlimited government right to terminate contracts. "The major impact of the termination for convenience procedure is that it relieves the government from the obligation of paying anticipated profits for unperformed work when it terminates the contractor's performance under the contract." *OFEGRO*, 700 A.2d at 199 (citations omitted).

647 A.2d 79, 80 n.1 (D.C. 1994). If a contract is terminated for the convenience of the government, the recovery of the contractor is limited to actual damages and reasonable profits on the work undertaken up to the time of termination. *OFEGRO*, 700 A.2d at 199–200. In other words, a disgruntled contractor *cannot* recover what plaintiff seeks here—lost anticipated earnings under the contract. *Id.*[9]

2.      *Plaintiff is Not a "Third-Party Beneficiary" Here.*

Plaintiff is not a third-party beneficiary of the District of Columbia's grant award from SAMHSA, even assuming that award is a legal contract. Self-claimed "[t]hird-party beneficiaries of a Government contract are generally assumed to be merely *incidental* beneficiaries, and may not enforce the contract absent clear intent to the contrary." *Moore v. Gaither*, 767 A.2d 278, 287 (D.C. 2001) (*quoting Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C. Cir. 1993) (emphasis in original)), *accord*, *A.S. Johnson Co. v. Atlantic Masonry Co.*, 693 A.2d 1117, 1122 (D.C. 1997). *See also Nguyen v. United States Catholic Conf.*, 548 F. Supp. 1333 (W.D. Pa. 1982); *aff'd.*, 719 F.2d 52 (3d Cir. 1983); *Drummond v. University of Penn.*, 651 A.2d 572, 578 (Pa. 1994).

Evidence of mere intent to benefit some third party is not enough; there must be *affirmative language in the contract* evincing the contracting parties' intent that the promisor

---

[9]      The only narrow exception to this broad limitation on recovery is where a contractor shows strong proof of bad-faith actions on the part of the government, which has been equated with "evidence of some specific intent to injure the [contractor]" or actions that were "motivated alone by malice." *Id.* at 201 (*quoting Kalvar Corp. v. United States*, 543 F.2d 1298, 1301–1302 (Cl. Ct. 1976)). Plaintiff has not—and cannot—show such bad faith on the part of the District. Plaintiff would have to demonstrate that the District had "conspired to injure [plaintiff] by that specific act," *i.e.*, the purported "termination." *OFEGRO*, 700 A.2d at 201.

will be held liable to specific third-parties in the event of nonperformance. *Drummond*, 651 A.2d at 579. *See also Schell v. National Flood Insurers Ass'n.*, 520 F. Supp. 150. 157 (D. Colo. 1981).

Needless to say, plaintiff has failed to provide a copy of any agreement between DMH and SAMHSA, much less cite to the specific, affirmative language required to evince an intent to benefit FASA or other alleged third-parties.

3.    *Plaintiff Has Not Been Denied Due Process.*

The first step in any due process analysis is "to determine whether constitutional safeguards apply at all, *i.e.*, whether a private party has a property or liberty interest that triggers Fifth Amendment due process protection." *Reeve Aleutian Airways, Inc. v. U.S.*, 982 F.2d 594 (D.C. Cir. 1993) (*citing Cleveland Bd. of Education v Loudermill*, 470 U.S. 532, 538–41 (1985)). *See also Bloch v. Powell*, 348 F.3d 1060, 1068 (D.C. Cir. 2003) (to have a property interest in a government benefit, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.") (*quoting Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

To prevail under a procedural due process claim, a plaintiff must show the existence of a protected property interest. "[P]roperty interests . . . are not created by the Constitution [but] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577; *Board of Curators v. Horowitz*, 435 U.S. 78, 82 (1978) ("[P]roperty interests are creatures of state law," not federal law). *See also 3883 Connecticut LLC v. District of Columbia*, 336 F.3d 1068, 1072 (D.C. Cir. 2003); *George Washington Univ. v. District of Columbia ("GWU")*, 318 F.3d 203, 205–08 (D.C. Cir. 2003).

This Circuit has made it clear that substantive due process "normally imposes only very slight burdens on the government to justify its actions . . . ." *GWU*, 318 F.3d at 206. In fact, in the absence of a protected liberty or property interest, there can be no substantive due process violation. *Id.* (*citing Roth*, 408 U.S. at 569–70). "Once a property interest is found, however, the doctrine of substantive due process constrains only egregious government misconduct." *GWU*, 318 F.3d at 209 (*citing Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988) (doctrine prevents only "grave unfairness"), *cert. denied*, 488 U.S. 956 (1988)); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (*per curiam*).[10]

The District's action here falls far short of this standard, which was recently reaffirmed by the Supreme Court. *See City of Cuyahoga Falls v. Buckeye Community Hope Found.*, 538 U.S. 188 (2003) (unanimous decision) ("[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" (*quoting County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

Plaintiff has not been deprived of *any* constitutionally protected rights. Plaintiff can point to no "entitlement" of which it has been denied without due process. If plaintiff has not been deprived of any protected interest, it cannot have suffered a violation of its procedural due process rights.

> It is clear that state law which generates a legitimate claim of entitlement can create an interest the deprivation of which triggers application of the Due Process Clause. It is equally clear, however, that state-created *procedures* do not create such an entitlement where none would otherwise exist. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."

---

[10]    *Silverman* identified two ways by which plaintiffs might show such unfairness: "a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights . . . ." *Silverman*, 845 F.2d at 1080. *See also GWU*, 318 F.3d at 209 (*quoting Silverman*). Plaintiff cannot meet this test here, even in its conclusory allegations.

*Doe by Fein v. District of Columbia*, 93 F.3d 861, 868 (D.C. Cir. 1996) (*per curiam*) (emphasis in original) (*quoting Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983) (further citations omitted)).

Plaintiff has cited no controlling or even persuasive case law for its argument that its "expectation" of grant funds is property in the constitutional sense here.[11]

If local government "makes ordinary judicial process available to respondent for resolving its . . . dispute, that process is due process." *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 197 (2001) (unanimous decision). Because plaintiff may pursue its local-law contract claims in the local agencies and courts, it has not been denied due process. *See Women's Develop. Corp*, 986 F.Supp. at 789 ("[P]laintiffs clearly have a state action for breach of contract, and hence are not denied due process to vindicate their interest in the contract.") (*citing S & D Maintenance v. Goldin*, 844 F.2d 962, 966 (2nd Cir. 1988) ("As long as a state provides judicial remedies for the enforcement of

---

[11] Aside from the unreported case from another jurisdiction, the other case cited by plaintiff, *Nat'l Juvenile Law Ctr. v. Regnery*, 738 F.2d 455 (D.C. Cir. 1984) (*per curiam*), fully supports the District here, though not directly on point. There, an organization funded *directly* by the federal government through a grant sued when the government refused to continue the group's funding, alleging "promissory estoppel" and a violation of due process. *Id*. at 456. The district court granted permanent injunctive relief, requiring the federal government to continue funding plaintiff. *Id*. The Circuit *reversed*, finding "little or no evidence that the government ever promised appellees it would provide continuation funding." *Id*. at 459. Moreover, said the Circuit, the numerous statements by the government that it would *not* be bound to continue funding rendered appellees' reliance on other "promises" unreasonable. *Id*. The Circuit noted, in addition: "[S]trong considerations of equity and public policy militate against estoppel. Separation of power concerns—which traditionally have restricted the availability of estoppel against the government—urge extreme caution in finding estoppel on the basis of facts like these." *Id*. at 464 (citation omitted). Finally, the Circuit held that appellees failed to make out a due process violation, because they had failed to show a reasonable reliance on a government "promise" which might support an "expectation interest" in continued funding. *Id*. at 465.

Here, the disputed grant funds were not awarded by the federal government directly, but through the District, there were no explicit "promises" to plaintiff to continue funding, and the District notified plaintiff on several occasions that it was not contractually bound to continue funding, DCEx. 4 at 1, PEx. D, DCEx. 5 ¶ 8, hence plaintiff's reliance on any actions of DMH was unreasonable as a matter of law under *Regnery*, and thus there is no due process violation here.

-14-

contracts, either specific performance or damages for breach, every person holds a legitimate expectation that his contractually conferred rights are secure.")).[12]

B.    Plaintiff Has Suffered No Irreparable Harm.

An essential prerequisite to injunctive relief is a sufficient showing by the plaintiff that it will suffer irreparable harm if the injunctive relief is not granted. *See, e.g., Davenport v. Int'l Brotherhood of Teamsters,* 166 F.3d 356, 360 (1999). *See also Sampson v. Murray*, 415 U.S. 61, 88–90 (1974). Plaintiff fails to make any showing of imminent, irreparable harm and therefore its motion must fail.

At a minimum, a plaintiff seeking emergency injunctive relief must make a threshold showing of irreparable injury. *CityFed*, 58 F.3d at 747 (*citing Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C. Cir. 1989) (preliminary injunction properly denied "where moving party may have been 'likely to succeed' but did not carry burden of showing irreparable harm, since 'the basis of injunctive relief in the federal courts has always been irreparable harm.'") (*quoting Sampson v. Murray*, 415 U.S. 61, 88 (1974) and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506 (1959))).

---

[12]    In *Women's Development*, a city funded a local organization with proceeds from a federal grant to develop housing for people with moderate incomes. *Id*. at 787. The city executed "funding agreements" with the group, but after disputes arose over allegations (by both sides) of noncompliance with those agreements, the group filed suit under 42 U.S.C. § 1983, alleging a constitutionally protected property interest in the performance of the agreements, in light of the "interdependence" of the group's agreements with the city and the city's commitment to the federal government under the grant. *Id*. at 788. The court dismissed the claim, holding that the organization's agreements with the city lacked "the quality of permanence" necessary to give plaintiff a federal, constitutionally protected property interest in the continuation of the agreements. *Id*. at 790. A contrary result, said the court, would cause the "wholesale federalization of state public contract law," which would be "far afield from the great purposes of the due process clause." *Id*. at 789 (*quoting Reich v. Beharry*, 883 F.3d 239, 242 (3rd Cir. 1989)).

Plaintiff alleges chiefly its own financial injuries. Contrary to plaintiff's implication, "no citizen has a 'right' . . . to do business with the government." *Gonzalez v. Freeman*, 334 F.2d 570, 574 (D.C. Cir. 1964) (*citing Perkins v. Lukens Steel Co.*, 310 U.S. 113 (1940)). Moreover, overwhelming case law is clear that economic loss is *insufficient* to constitute irreparable harm unless the movant's very existence is threatened. *See Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Here, plaintiff has failed to show irreparable harm because it has offered no credible proof that the very existence of its business will be threatened, alleging only that it "may" be forced to close. P.Mem. at 9. *See Eastern Trans-Waste of Md., Inc. v. District of Columbia*, 758 A.2d 1, (D.C. 2000) (The "record evidence is sufficient to show the threat to ETW's continued existence without an injunction.") (*citing, inter alia, Wisconsin Gas Co.*).

The District should not be penalized because FASA has apparently structured its business so that the District is a substantial source of its income. The District's actions here reflect nothing more than the reasonable and prudent investigation required for an entity (the District) receiving federal grant funding.

Here, while the District does not downplay the serious nature of the potential impacts alleged by plaintiff, plaintiff has failed to show irreparable harm because it has not offered any credible proof that the very existence of its organization will be threatened.

Plaintiff has failed to establish imminent, irreparable harm, and its application for emergency injunctive relief should be denied.


C.    The Balance of Equities Favors Denying Injunctive Relief.

The balance of equities tips in favor of the defendants where plaintiff essentially is asking this Court to issue a mandatory injunction at the onset of the case. In other words, plaintiff seeks

the ultimate relief at the beginning of the litigation. The District has an obligation here to insure that federal monies are being (and have been) properly spent and accounted for.

In these circumstances, the balance of the equities favors the District of Columbia.

         D.      <u>The Public Interest Favors the District.</u>

It is plaintiff's financial self-interest, not the public interest, which is at the root of this complaint. The referenced federal funds serve a larger population than simply plaintiff here. An immediate award to plaintiff here will prevent those funds from going to other, potentially more pressing needs. The public interest is served by requiring plaintiff to resolve its dispute in the proper forum, and not unnecessarily consume *federal* judicial resources on this preeminently *local* claim. The public interest here therefore favors the denial of injunctive relief.

### III. <u>Conclusion</u>

Plaintiff has failed to satisfy the requisite elements of the four-part test for emergency injunctive relief. Accordingly, its application for a temporary restraining order should be denied.

DATE: June 13, 2005          Respectfully submitted,

                                 ROBERT J. SPAGNOLETTI
                                 Attorney General, D.C.

                                 GEORGE C. VALENTINE
                                 Deputy Attorney General, D.C.
                                 Civil Litigation Division

_____/s/ Richard S. Love_____
RICHARD S. LOVE, D.C. Bar No. 340455
Chief, Equity I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6635
Facsimile: (202) 727-0431
richard.love@dc.gov

_____/s/ Andrew J. Saindon_____
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity 1
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov