UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAMILY ADVOCACY AND SUPPORT ASSOCIATION )<br><br>Plaintiff, )<br><br>v. )<br><br>MARTHA B. KNISELY, *et al.*, )<br><br>Defendants. ) | Civil Action No. 05-1161 (ESH) |

DISTRICT OF COLUMBIA DEFENDANTS' MOTION TO DISMISS

The District of Columbia defendants herein (collectively, "the District"), by and through undersigned counsel, move pursuant to Fed. R. Civ. Pro. 12(b)(1) and (6) to dismiss plaintiff's claims and as grounds therefore state as follows:

1) Plaintiff fails to identify a constitutionally protected property interest that triggers due process protection.

2) Even if plaintiff had identified a constitutionally protected property interest, plaintiff has not been denied due process.

3) Alternatively, the Court should not exercise supplemental jurisdiction even if a federal claim has been stated.

For all the above-stated reasons, which are set forth more fully in the attached memorandum of points and authorities, the District defendants' motion to dismiss should be granted.

DATE: June 28, 2005                         Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General, D.C.

GEORGE C. VALENTINE
Deputy Attorney General, D.C.
Civil Litigation Division


     /s/ Richard S. Love
RICHARD S. LOVE, D.C. Bar No. 340455
Chief, Equity I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6635
Facsimile: (202) 727-0431
richard.love@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAMILY ADVOCACY AND SUPPORT ASSOCIATION | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 05-1161 (ESH) |
| MARTHA B. KNISELY, *et al.*, | )<br>)<br>) |
| Defendants. | )<br>) |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DISTRICT OF COLUMBIA DEFENDANTS' MOTION TO DISMISS

The Court should dismiss plaintiff's claims because plaintiff does not enjoy a constitutionally protected property interest in funds it anticipated receiving from the District defendants and even if it did, it has not been denied due process. Plaintiff has failed to identify any entitlement to these funds, let alone a constitutionally protected one; it has no contract or any signed written agreement with the District, plaintiff's claims are substantively meritless, and are, at any rate, entirely local in character. This Court should not exercise jurisdiction here.

I. Factual and Procedural Background

In 2002, the District of Columbia, through its Department of Mental Health ("DMH"), was awarded a multi-year grant by the U.S. Department of Health and Human Services ("HHS") through its Substance Abuse and Mental Health Services Administration ("SAMHSA") to establish D.C. Children Inspired Now Gain Strength ("DC CINGS"), a program to provide comprehensive community mental health services for children and their families. Plaintiff's

Memorandum ("P.Mem.") at 1; Plaintiff's Exhibit No. ("PEx.") A; District's Exhibit No. ("DCEx.") 1 at 1.[1] DMH awarded plaintiff FASA funds during the first two fiscal years (FY 03 and FY 04) as a "subgrantee" under the grant. Although unsigned, there was a written sub-grant agreement from D.C. CINGS to FASA in each of those two fiscal years (FY 03 and FY 04). See, e.g., "PEx B(October 1, 2002 through September 30, 2003) (the sub-grant agreement for FY 04, October 1, 2003 through September 30, 2004, was sent to the Court and counsel by facsimile on June 20, 2005). No sub-grant agreement was generated for FY 05 (October 1, 2004 through September 30, 2005).

Over a year ago, DMH became concerned with the financial practices of FASA, and requested records from FASA. DCEx. 2 (letter of Apr. 5, 2004). DMH subsequently performed an audit on the records received from FASA. DCEx. 3 (audit report of Aug. 9, 2004). That audit revealed a number of accounting irregularities on FASA's part, including a failure timely to file quarterly reports (which themselves were incomplete), *id.* at 1–2, a number of checks written directly to FASA principals (a "highly unusual practice") or made out to "Cash," *id.* at 2, and the expenditure of almost half the grant funds on a FASA "board retreat." *Id*.

On August 27, 2004, DMH sent a copy of the audit to FASA, and requested a response in light of the audit's results. DCEx. 4.[2] A copy of the letter and audit was also sent to SAMHSA.

---

[1] The District does not admit the allegations of the Complaint except for the purposes of this motion.

[2] The August 27, 2004, letter from DMH to FASA—standing alone—contradicts the foundation of plaintiff's complaint, that "FASA has never received any notice from DMH indicating that FASA has failed to comply with its obligations under its sub-contract [sic] with DMH, nor has FASA been given an opportunity to be heard . . . ." Morgan Decl. ¶ 12. *See, e.g., American Tower v. Williams*, 146 F. Supp. 2d 27 (D.D.C. 2001), *aff'd without opinion*, 50 Fed. Appx. 448 (D.C. Cir. 2002):
> Although the procedure provided was not extensive as plaintiff would have liked, and while plaintiff disagrees with the facts and law upon which the District relied

*Id*. at 2. The letter expressly informed FASA that additional "funding *will not be available* until the issues and concerns are resolved and a plan of corrective action that includes training and technical assistance is in place." *Id*. at 1 (emphasis added).

Although the funds subject to this audit were ultimately released, in an October 25, 2004 letter to plaintiff (a copy of which was sent to the Court and counsel by facsimile on June 20, 2005) advising it of the impending plan to release these funds, FASA was advised:

> that DMH and the Substance Abuse Mental Health Services Administration ("SAMHSA") have agreed in principle to change the terms and conditions of the DC CINGS Grant for years 03 through 06, to award family related contracts to a broader collaborative of family groups. We anticipate that the change in the terms and conditions will be effective soon.

Subsequently, the D.C. Office of the Inspector General ("OIG") began an investigation regarding FASA's use of the grant funds. PEx. D. DMH responded to the OIG's request for information by letter dated December 20, 2004, in which DMH indicated that, while FASA had been a subgrantee, there was no signed agreement between those two parties. *Id*. *(*Indeed, in FY 05 there was no sub-grant agreement document at all, signed or unsigned*)*. Additionally, the letter notified the OIG that DMH and SAMHSA had agreed in principle to change the terms of the grant award to DC CINGS, and that FASA's *entitlement or non-entitlement to funds may be affected*. *Id*. at 2.[3] A copy of the letter was also provided to FASA. *Id*. at 3.

---

> . . . the District gave [plaintiff] sufficient notice and opportunity to be heard at a meaningful time and in a meaningful manner, which is all that due process requires.

*Id*. at 33 (*citing Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)) (additional citations omitted)).

[3] PEx. F, a letter dated November 15, 2004, from SAMHSA to DMH, evidences such an agreement, as SAMSHA references the DMH-proposed reduced role of FASA without objection. *Id*. at 5.

FASA met with DMH in May of 2005, and requested payment for "invoices" for work done; DMH informed FASA that there was no contractual arrangement between the parties for the period in question. DCEx. 5 (Declaration of Shauna Spencer, dated June 10, 2005 ("Spencer Decl.")) at ¶ 8. DMH also informed FASA at that meeting, as per the terms of the August 27, 2004, letter, if "appropriate financial and legal procedures were in place," DMH would resume discussions with FASA regarding a role for FASA in the DC CINGS project.

Plaintiff FASA filed the instant complaint on or about June 9, 2005.

## II. Argument

*1.     Plaintiff Has No Constitutionally Protected Property Right*

The first step in any due process analysis is "to determine whether constitutional safeguards apply at all, *i.e.*, whether a private party has a property or liberty interest that triggers Fifth Amendment due process protection." *Reeve Aleutian Airways, Inc. v. U.S.*, 982 F.2d 594 (D.C. Cir. 1993) (*citing Cleveland Bd. of Education v Loudermill*, 470 U.S. 532, 538–41 (1985)). *See also Bloch v. Powell*, 348 F.3d 1060, 1068 (D.C. Cir. 2003) (to have a property interest in a government benefit, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.") (*quoting Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

To prevail under a procedural due process claim, a plaintiff must show the existence of a protected property interest. "[P]roperty interests . . . are not created by the Constitution [but] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577; *Board of Curators v. Horowitz*, 435 U.S. 78, 82 (1978) ("[P]roperty interests are creatures of state law," not federal law). *See also 3883 Connecticut LLC v. District of Columbia*, 336 F.3d 1068, 1072 (D.C. Cir. 2003);

*George Washington Univ. v. District of Columbia ("GWU")*, 318 F.3d 203, 205–08 (D.C. Cir. 2003).

Plaintiff has not been deprived of *any* constitutionally protected rights. Plaintiff can point to no "entitlement" of which it has been denied. Indeed, there is no sub-grant agreement for this current fiscal year, signed or unsigned and the prior year's sub-grant agreement (FY 04, a copy of which was sent by facsimile to the Court and counsel on June 20, 2005) indicated that future funding was contingent on a number of factors including successful completion by FASA of all obligations under the sub-grant (see page 2, Source of Grant Funding). Such contingent expectations do not rise to the level of a constitutionally protected property interest. If plaintiff has not been deprived of any protected interest, it cannot have suffered a violation of its procedural due process rights.

> It is clear that state law which generates a legitimate claim of entitlement can create an interest the deprivation of which triggers application of the Due Process Clause. It is equally clear, however, that state-created *procedures* do not create such an entitlement where none would otherwise exist. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."

*Doe by Fein v. District of Columbia*, 93 F.3d 861, 868 (D.C. Cir. 1996) (*per curiam*) (emphasis in original) (*quoting Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983) (further citations omitted)).

Plaintiff has cited no controlling or even persuasive case law for its argument that its "expectation" of grant funds is property in the constitutional sense here.[4]

---

[4] In plaintiff's motion for a temporary restraining order, aside from an unreported case from another jurisdiction, the only other case cited by plaintiff, *Nat'l Juvenile Law Ctr. v. Regnery*, 738 F.2d 455 (D.C. Cir. 1984) (*per curiam*), fully supports the District here, though not directly on point. There, an organization funded *directly* by the federal government through a grant sued when the government refused to continue the group's funding, alleging "promissory estoppel" and a violation of due process. *Id*. at 456. The district court granted permanent injunctive relief, requiring the federal government to continue funding plaintiff. *Id*. The Circuit *reversed*, finding "little or no evidence that the government ever promised appellees it would

Furthermore, in the absence of a protected liberty or property interest, there can be no substantive due process violation. *Id*. (*citing Roth*, 408 U.S. at 569–70).[5]

2.   *Even If Plaintiff Had A Property Interest, It Has Not Been Denied Due Process*

If local government "makes ordinary judicial process available to respondent for resolving its . . . dispute, that process is due process." *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 197 (2001) (unanimous decision). Because plaintiff may pursue its local-law contract *and other* claims in the local agencies and courts, it has not been denied due process. *See, e.g., Women's Develop. Corp v. City of Central Falls*, 986 F.Supp. 786 (D.R.I. 1997) ("[P]laintiffs clearly have a state action for breach of contract, and hence are not denied due process to vindicate their interest in the

---

provide continuation funding." *Id*. at 459. Moreover, said the Circuit, the numerous statements by the government that it would *not* be bound to continue funding rendered appellees' reliance on other "promises" unreasonable. *Id*. The Circuit noted, in addition: "[S]trong considerations of equity and public policy militate against estoppel. Separation of power concerns—which traditionally have restricted the availability of estoppel against the government—urge extreme caution in finding estoppel on the basis of facts like these." *Id*. at 464 (citation omitted). Finally, the Circuit held that appellees failed to make out a due process violation, because they had failed to show a reasonable reliance on a government "promise" which might support an "expectation interest" in continued funding. *Id*. at 465.

Here, the disputed grant funds were not awarded by the federal government directly, but through the District, there were no explicit "promises" to plaintiff to continue funding, and the District notified plaintiff on several occasions that it was not contractually bound to continue funding, DCEx. 4 at 1, PEx. D, DCEx. 5 ¶ 8, hence plaintiff's reliance on any actions of DMH was unreasonable as a matter of law under *Regnery*, and thus there is no due process violation here.

[5]   At any rate, substantive due process "normally imposes only very slight burdens on the government to justify its actions . . . ." *GWU*, 318 F.3d at 206. In fact, "Once a property interest is found, however, the doctrine of substantive due process constrains only egregious government misconduct." *GWU*, 318 F.3d at 209 (*citing Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988) (doctrine prevents only "grave unfairness"), *cert. denied*, 488 U.S. 956 (1988)); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (*per curiam*).

The District's action here falls far short of this standard, which was recently reaffirmed by the Supreme Court. *See City of Cuyahoga Falls v. Buckeye Community Hope Found.*, 538 U.S. 188 (2003) (unanimous decision) ("[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" (*quoting County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

contract.") (*citing S & D Maintenance v. Goldin*, 844 F.2d 962, 966 (2nd Cir. 1988) ("As long as a state provides judicial remedies for the enforcement of contracts, either specific performance or damages for breach, every person holds a legitimate expectation that his contractually conferred rights are secure.")).

In *Women's Development*, a city funded a local organization with proceeds from a federal grant to develop housing for people with moderate incomes. *Id*. at 787. The city executed "funding agreements" with the group, but after disputes arose over allegations (by both sides) of noncompliance with those agreements, the group filed suit under 42 U.S.C. § 1983, alleging a constitutionally protected property interest in the performance of the agreements, in light of the "interdependence" of the group's agreements with the city and the city's commitment to the federal government under the grant. *Id*. at 788. The court dismissed the claim, holding that the organization's agreements with the city lacked "the quality of permanence" necessary to give plaintiff a federal, constitutionally protected property interest in the continuation of the agreements. *Id*. at 790. A contrary result, said the court, would cause the "wholesale federalization of state public contract law," which would be "far afield from the great purposes of the due process clause." *Id*. at 789 (*quoting Reich v. Beharry*, 883 F.3d 239, 242 (3rd Cir. 1989)).

Similarly here, FASA's prior "agreements" with the District, even assuming they are legally enforceable contracts, lack the "quality of performance" necessary to confer a federal, constitutionally protected property interest in continued funding if for no other reason than the contingent nature of the grant award.

3.   *The Court Should Not Exercise Jurisdiction Here.*

The underlying premise of this dispute is apparently that plaintiff has an "agreement" with the District, which has either "breached" that agreement, or is about to, or both. But whether or not some sort of legally enforceable agreement exists between the District and plaintiff is a question of *local* law, a simple matter of contracts jurisprudence, which obviously is of preeminent importance to District government. Further, it appears that the only reason the federal government—the source of the disputed grant funds—was named here was in an attempt to bootstrap plaintiff into federal court. A review of plaintiff's Application here fails to reveal a *single* allegation of wrongdoing on the part of *any* federal entity; if plaintiff's theory of jurisdiction were correct, every "breach" of an agreement utilizing federal funds would be a presumptive violation of "due process" and entitle parties to proceed directly to federal court, which would soon be overwhelmed with litigation. Federal jurisdiction is not so swiftly nor easily obtained. *See, e.g., Women's Develop. Corp.* 986 F.Supp. at 789 ("Federal courts have been reluctant to extend federal protection of state-law rights against invasion by state actors, as [plaintiff] suggests this court should do, to the breaking point at which every contract breach by a public entity gives rise to a civil rights claim by the aggrieved party.") (*citing Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1299 (3rd Cir. 1991)).

Alternatively, even if the Court finds that plaintiff has stated a federal claim, which the District defendants for the above-stated reasons submit they have not, the Court should *not* exercise jurisdiction since the local-law claims are at the heart of plaintiffs' suit. *Barwood v. District of Columbia*, 202 F.3d 290, 296 (D.C. Cir. 2000) (a federal court abuses its discretion when it exercises supplemental jurisdiction over local-law claims which "substantially predominate" over federal claims); *Grano v. Barry*, 733 F.2d 164, 169 (D.C. Cir. 1984) (Circuit

dissolved injunction; "Appellees' remedy, if any, lies in the courts of the District of Columbia."); *cf. Women Prisoners of the District of Columbia Dept. of Corrections v. District of Columbia*, 93 F.3d 910, 921 (D.C. Cir. 1996) (district court may consider local-law claims because federal claims "were substantial enough to confer subject matter jurisdiction on the court . . . ."), *cert. denied*, 520 U.S. 1196 (1997).

Plaintiff's federal claims, to the extent they even exist here, are not substantial enough to confer subject matter jurisdiction on the Court.

Finally, to the extent plaintiff's due process claim is based on an "entitlement" to the federal funds granted to the District, it fails. In a similar case from another jurisdiction, a local non-profit group sued a state agency, alleging that the agency had improperly terminated it, after an audit, from receiving passed-through federal grants designated to provide poverty-relief services. *Guilford County Community Action Program, Inc. v. Wilson*, 348 F.Supp.2d 548, 550 (M.D.N.C. 2004). The group sued under 42 U.S.C. § 1983, alleging a violation of due process. *Id*. at 551. The court dismissed the claim, finding that the only arguable law under which the organization might have had a property right to continued funding was the *federal* law establishing the grant program, which was insufficient to create a legitimate *federal* claim of entitlement to that funding. *Id*. at 562.[6] Moreover, said the court, there was no explicit private right of action under that federal statute for entities such as the organization. "[I]n legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance, but rather action by the Federal Government to terminate funds to the State." *Id*. at 555 (*quoting Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 28 (1981)).

Here, plaintiff does not even cite the federal grant statute implicated here, much less reference the specific language necessary to invoke the jurisdiction of this Court.

> As previously noted, a statute must provide a clear right to some intended beneficiary in order for a private right of enforcement to exist. The fact, however, that some individuals may receive benefits from the statute is a different question than whether the statute was *intended* to benefit that group of plaintiffs.

*Guilford County*, 348 F.Supp.2d at 558 (emphasis in original) (*citing Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002)) (further citations omitted).

Here, if a federal claim exists, and the District submits one has not been stated, it pales in comparison to the predominantly local law claims at issue. The Court should not exercise supplemental jurisdiction here.

### III. Conclusion

For all the above-stated reasons, plaintiff's claims against the District defendants should be dismissed.

DATE: June 28, 2005            Respectfully submitted,

                                              ROBERT J. SPAGNOLETTI
                                              Attorney General, D.C.

                                              GEORGE C. VALENTINE
                                              Deputy Attorney General, D.C.
                                              Civil Litigation Division

                                                /s/ Richard S. Love
                                              RICHARD S. LOVE, D.C. Bar No. 340455
                                              Chief, Equity I
                                              441 Fourth Street, N.W., 6th Floor South
                                              Washington, D.C. 20001
                                              Telephone: (202) 724-6635
                                              Facsimile: (202) 727-0431
                                              richard.love@dc.gov

---

[6] As noted previously, property interests stem not from the Constitution, but from local law.